UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 06-357-JBC**

**DELTA T CORPORATION,**                                                          **PLAINTIFF,**

**V.**                      <u>**MEMORANDUM OPINION AND ORDER**</u>

**SUN-NORTH SYSTEMS LTD and**
**ENVIRA-NORTH SYSTEMS LTD,**                                   **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

      This matter is before the court on the motion of the plaintiff, Delta T Corporation, for a preliminary injunction to prevent the defendants, Sun-North Systems, Ltd., and Envira-North Systems, Ltd., from disseminating information or statements regarding patents held by the plaintiff to the plaintiff's customers pending the results of arbitration (DE 11).  The defendants have also filed a motion to dissolve the "federalized" temporary restraining order[1] that essentially enjoins the same actions (DE 6).  A hearing on these motions and on the motions in a related case, Lexington Civil Action No. 5:06-cv-00345-JBC, was held on November 13, 2006.  The court, having reviewed the record and being otherwise advised, will deny the motion for a preliminary injunction (DE 11).  Because the court, in a

---

      [1]When a case is removed to federal court from state court, the provisions of Fed. R. Civ. P. 65, including the 10-day limitation upon the duration of a temporary restraining order, apply to a temporary restraining order previously issued by the state court.  *Granny Goose Foods, Inc. v. Bhd. of Teamsters,* 415 U.S. 423 (1974).

previous order, found that the temporary restraining order would expire on November 16, 2006, the court will deny, as moot, the motion to dissolve this restraining order (DE 6).

I.     BACKGROUND

On July 11, 2002, defendant Sun-North Systems, Ltd. ("Sun-North"), entered into a distribution agreement which has given rise to the matter at hand. The agreement was made between Sun-North and HVLS Fan Company ("HVLS"), which was simply another name for Delta T Corporation ("Delta T"). The defendant, Envira-North Systems, Ltd. ("Envira-North"), was not a party to the agreement between Sun-North and HVLS because Envira-North did not exist at the time the distribution agreement was signed, although the defendants have claimed that Envira-North's existence was "conceived" as early as 2000.

In the distribution agreement, HVLS appointed Sun-North to be the exclusive Canadian distributor of its high-volume low-speed fans. This distribution agreement was short-lived. On March 27, 2003, Monica Bowden, the CEO of Sun-North, faxed a letter on behalf of Sun-North to Carey Smith, the CEO of both HVLS and Delta T. In this letter, she stated Sun-North's intent to terminate the distribution agreement with thirty days' notice. On April 1, 2003, Carey Smith replied to this letter on behalf of Delta T, acknowledging Sun-North's "right to terminate [the] relationship" but claiming that Sun-North's "obligation to maintain our trade secrets survives the agreement . . . ."

2

Slightly over a month before Sun-North sent notice of its intent to terminate the distribution agreement with Delta T, Envira-North was incorporated in Canada on February 3, 2003. Monica Bowden was and remains the CEO of both Sun-North and Envira-North. Dan Lambert was and remains the sole shareholder of both Sun-North and Envira-North. Shortly after its creation in early 2003, Envira-North entered the high-volume low-speed fan business as a distributor for an entity known as Macro Air. In July 2005, Envira-North terminated its relationship with Macro Air, and in 2006 Envira-North began manufacturing its own high-volume low-speed Altra-Air ceiling fans. (Hr'g Tr. at 99-100.) During the hearing before the court, Monica Bowden admitted that Envira-North was formed, at least in part, to continue and to shield from liability the fan business previously conducted by Sun-North. *Id.* at 78-79.

The distribution agreement between HVLS and Sun-North contained an arbitration clause, and on August 25, 2006, Delta T filed a demand for arbitration based on this arbitration clause. In the related case, the court has construed this document as mandating arbitration of Delta T's claims against Sun-North and Envira-North. In its demand for arbitration, Delta T alleges that "Sun-North established Envira-North after it executed [the distribution agreement] . . . [and] transferred the operations covered by that agreement over to Envira-North." Delta T claims that the subsequent actions of Sun-North and Envira-North constituted arbitrable, and perhaps actionable, patent infringement and extortion. In the

3

hearing before this court on November 13, 2006, Delta T indicated that it intends to add a claim for breach of contract to its demand for arbitration.

On October 11, 2006, Delta T filed suit in Kentucky state court against Sun-North and Envira-North, alleging that Envira-North was manufacturing and selling fans that infringe Delta T's patents. Delta T also alleged that the defendants had threatened to disclose information to Delta T's remaining distributors "which may enable other legal actions to invalidate [Delta T's] Patents." (DE 1-2 at 3.) In its complaint, Delta T sought injunctive relief against the defendants' alleged threatened dissemination of its intellectual property, damages, costs, and fees. Along with its complaint, Delta T filed a motion for a temporary restraining order in state court, seeking to prohibit the defendants from "disseminat[ing] to Plaintiff's distributors, competitors or others in the industry any information or statements regarding patents held by Plaintiff or challenges to said patents by the Defendants or another entity." (DE 1-2 at 17.) This motion was granted, and the restraining order was entered by the state court on October 11, 2006.

On October 18, 2006, the defendants removed the action to this court, and on October 23, 2006, they moved to dissolve the state-court restraining order. On October 26, 2006, Delta T filed the motion currently before the court. With this motion, Delta T seeks an order from this court "that, pending resolution of the parties' claims in arbitration or further orders of this court, Defendants shall not disseminate to Plaintiff's distributors, competitors, or others in the industry any

4

information or statements regarding patents held by Plaintiff or challenges to said patents by the Defendants or another entity." (DE 11-8 at 1.)

The court held a telephonic hearing on these issues on October 26, 2006. On the court's own motion, the federalized temporary restraining order was extended until November 16, 2006, and the parties were given an expedited schedule to respond and reply to the plaintiff's motion to convert the state court restraining order into a preliminary injunction. On November 13, 2006, the court held a hearing on this motion and on the pending motions in the related case.

## II.   ANALYSIS

"To determine whether to grant a preliminary injunction, a district court must consider" four factors: "'(1) the plaintiffs' likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest.'" *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001)). The absence of any of these factors, standing alone, may prove fatal to a request for a preliminary injunction, but at the same time, none of these factors is a necessary prerequisite to relief; rather, the court should "ordinarily analyze all of the factors" together and "balance them" against each other to determine whether a preliminary injunction should issue. *Abney*, 443 F.3d at 546-547. The defendants argue that the

proposed preliminary injunction violates their First Amendment rights. The court will not reach this issue, however, because it finds that Delta T has not shown a likelihood of success on the merits of its claims; because it finds that Delta T has not shown that it might suffer irreparable harm absent the injunction; and because it finds that the issuance of the injunction may cause substantial harm to the defendants and to the public interest.

Although the court will deny Delta T's motion for a preliminary injunction at this time, in the related case, the court has granted Delta T's motion to compel Envira-North and Sun-North to arbitration. The arbitration in this matter will be conducted before the American Arbitration Association, and the governing arbitration agreement in this matter provides that the arbitration shall be conducted according to the Rules of the American Arbitration Association. Rule 34 of the Commercial Arbitration Rules of the American Arbitration Association provides that "[t]he arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief[,]" and it also specifically provides that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." Rule 43 of the Commercial Arbitration Rules provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." Accordingly, nothing in this order precludes Delta T

from requesting injunctive relief before the arbitrator in the forthcoming arbitration proceedings.

Based on the information presented to date, however, the court finds that Delta T has not yet shown a likelihood of success on the merits of its claims. First, Delta T has presented no proof of its patent infringement claim. Second, although Delta T has presented some proof to support its extortion claim, in the form of correspondence from Envira-North's Canadian solicitors, this correspondence, without more, does not show a likelihood of success for its extortion claim. The relevant portion of Kentucky's extortion statute, Ky. Rev. Stat. § 514.080(1)(c), states that a person is guilty of extortion when she threatens to "[e]xpose any secret tending to subject any person to hatred, contempt, or ridicule, or to impair his credit or business repute . . . ." The correspondence from the Canadian solicitors might be interpreted as a threat, but Delta T has not yet shown a likelihood of success on its claim that this potential threat would impair its credit or business repute. Finally, Delta T has not yet articulated its potential breach of contract claim, and therefore the court cannot consider whether Delta T has shown that this claim is likely to succeed. Although Delta T may have more success in demonstrating a likelihood of success for its claims with more proof before the arbitrator, it has failed to show that its claims are likely to succeed at this time.

Moreover, the court finds that Delta T has not yet shown that it will suffer irreparable harm in the absence of the injunction. To demonstrate irreparable harm,

7

Delta T must show that it will suffer "actual and imminent" harm in the absence of an injunction, "rather than harm that is speculative or unsubstantiated." *Abney*, 443 F.3d at 552; *see also Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (stating that irreparable harm involves an injury that "must be both certain and great; it must be actual and not theoretical"). Additionally, "simple economic loss does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 11A Federal Practice & Procedure § 2948.1 (2d ed. 1995)). Delta T has alleged that the defendants' threatened communications with its customers "would substantially damage Delta T's relationship with its distributors" because "the strength of those relationships is predicated, in part, upon the integrity of Delta T's intellectual property, including its patents and trademarks." (DE 11-3 at 2.) But at present, these threatened harms are neither actual nor imminent but merely potential; and furthermore, Delta T has not shown that money damages would fail to satisfy the potential harm caused by these potential communications. Again, although Delta T may present a more compelling argument to the arbitrator that irreparable harm will result without an injunction, it has failed to show that such an irreparable, imminent harm actually exists at this time.

    Finally, the court finds that the proposed preliminary injunction might work a substantial harm to the defendants in the future course of their arbitration and

litigation with Delta T, and therefore, the court also finds that the proposed injunction might harm the public interest.  Again, the draft restraining order proposes that "Defendants shall not disseminate to Plaintiff's distributors, competitors, or others in the industry any information or statements regarding patents held by Plaintiff or challenges to said patents by the Defendants or another entity."  (DE 11-8 at 1.)  The defendants have expressed their concern that this order could preclude them from soliciting expert testimony or other materials necessary to defend against Delta T's claims in arbitration or in court.  The court finds that these concerns have some merit, particularly with respect to the potential issue of damages: if the defendants are placed under a blanket prohibition forbidding them from discussing Delta T's patents with Delta T's customers, they may be unable to defend themselves against Delta T's claims for damages in arbitration or in court.  Imposing such a severe restraint on their ability to mount a defense would cause substantial harm to both the defendants and to the public interest in speedy, equitable litigation.

At the hearing, Delta T suggested that these problems could be cured by redrafting the proposed injunction, perhaps by giving future courts or arbitrators the ability to modify the injunction as necessary for legal defenses.  The court has considered this suggestion, but after reviewing all of the relevant factors, the court finds that the balance of potential hardships would be best served if Delta T simply moved for an entirely new, perhaps more modest, preliminary injunction in the

9

forthcoming proceedings before the arbitrator.

In the related case, Delta T moved to stay the proceedings along with its motion to compel arbitration. The related action, however, involved a complaint filed by Envira-North, Sun-North, and Monica Bowden to enjoin Delta-T's arbitration proceedings, and the requested relief in that complaint has been substantially denied by the court's order compelling Envira-North and Sun-North to arbitrate. Therefore, the court has denied Delta T's motion to stay in that case as moot. In this case, however, Delta T filed the original complaint, seeking injunctive relief, damages, costs, and fees, and the court has not fully resolved these claims. Therefore, the court, by its own motion, will stay the proceedings in this case, pending the arbitration of Delta T's claims against Sun-North and Envira-North. Accordingly,

**IT IS ORDERED** that the motion for a preliminary injunction (DE 11) is **DENIED**.

**IT IS ALSO ORDERED** that the motion to dissolve the temporary restraining order (DE 6) is **DENIED** as **MOOT**.

**IT IS ALSO ORDERED** that the proceedings in this case be **STAYED** pending the results of arbitration. The parties shall jointly file a status report no later than 3 months after the date of entry of this order.

Signed on November 15, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY